**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LESLEY J. HORTON, III,**

        **Plaintiff,**

**-vs-**                              **Case No. 6:11-cv-318-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Although Plaintiff requested oral argument, the Court finds that it is not necessary given the development of the record.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on September 14, 2007. R. 15. He alleged an onset of disability on January 17, 2005, due to insulin dependent type II diabetes mellitus – not well controlled – and ulcers and cellulitis left leg, and neuropathy in both his lower and

his upper extremities, pain in lower back, both knees, and left hip, and cataracts. R. 33-34, 45-55, 94-96, 142, 165, 182, 189, 193, 200, 219, 226. His application was denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on August 12, 2009, before Administrative Law Judge Jose Perez-Gonzalez (hereinafter referred to as "ALJ"). R. 27-83. In a decision dated September 11, 2009, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 15-26. Plaintiff timely filed a Request for Review of the ALJ's decision which was denied on January 31, 2011. R. 1. Plaintiff filed this action for judicial review on March 2, 2011. Doc. 1.

### B.   Medical History and Findings Summary

Plaintiff was fifty-nine years old at the time of the ALJ's decision. R. 38. Plaintiff had his GED and worked as a handyman, lumber mill worker, cabinet assembler, and as a dishwasher. R. 40, 42-44. Plaintiff was incarcerated from 1992 to 1999 for DUI manslaughter and from June 2005 to September 2005 and June 2006 to September 2007 for violation of probation. R. 40-41.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of diabetes, an abscess on his leg, and and neuropathy in his extremities. R. 33-34, 39. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered obesity, diabetes mellitus type two, cellulitis, and edema of left leg with status post lesions and deep vein thrombosis, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 17, 19. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform the full range of medium work. R. 19. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 24. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the

ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a kitchen helper, welder, and a wood and lumber worker. R. 25. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 26.

Plaintiff now asserts five points of error. First, he argues that the ALJ erred by failing to specify the weight assigned to each medical opinion and in failing to give proper weight to the opinions of the treating sources which precluded medium duty. Second, he claims the ALJ erred by failing to explain two inconsistent findings that Plaintiff could do medium work but not his past relevant work, which was also at the medium exertional level. Third, Plaintiff contends the ALJ erred by not considering all of his impairments, both singly and in combination. Fourth, he asserts that the ALJ erred by failing to properly consider the factors related to his alleged non-compliance. Fifth, he argues that the ALJ erred in failing to order a consultative examination for Plaintiff's impairments or re-contacting his treating physician. All arguments are considered, though not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **REVERSED,** and the case is **REMANDED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   RFC and Plaintiff's impairments

Plaintiff claims that the ALJ should not have found him capable of medium work based primarily on the opinion of the state agency non-examining physician, and without giving the proper

weight to the opinions of other treating sources which precluded medium work because he cannot do prolonged standing or walking. He also contends that the ALJ erred by not considering all of his impairments, both singly and in combination. Plaintiff further argues that the ALJ's assignment of an RFC for medium work is inconsistent with the ALJ's determination that Plaintiff could not perform his past relevant work, most of which was classified as medium. The Commissioner contends that the ALJ gave proper consideration to the medical opinions of record and substantial evidence supports his findings.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not

in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534.

Plaintiff contends that the ALJ failed to explain two inconsistent findings – that Plaintiff had the RFC for medium work, yet he could not perform past relevant medium-level work. After finding that Plaintiff could perform work at the medium exertional level (R. 19), the ALJ summarized the VE's testimony classifying the Plaintiff's past relevant work. R. 24. Four of the five jobs the VE described were medium in exertion. R. 24, 79. Medium work involves lifting no more than 50 pounds at a time with frequent lifting of objects weighing up to 25 pounds; it includes the ability to do light and sedentary work, and can involve a good deal of walking or standing. See 20 C.F.R. §§ 404.1567 (c), 416.967(c).

Plaintiff is correct that the ALJ erred in inconsistently determining Plaintiff had a medium RFC, yet finding Plaintiff could not perform medium-level past relevant work. The ALJ's decision in that regard was not based on substantial evidence. The ALJ offers no explanation for the inconsistency, and the Commissioner does not address any argument at all to what is clear error in the ALJ's analysis. The case could be remanded on that basis alone.

However, the ALJ's finding that Plaintiff could perform medium-level work was also not based on substantial evidence. As explained in detail below, Plaintiff has developed chronic recurring problems with his left leg, described at various times as diabetic ulcers, venous stasis ulcers[1], cellulitis, and staph infections; these have been slow to heal and have repeatedly recurred from 2005

---

[1] Such ulcers are common in patients who have a history of leg swelling or a history of blood clots in either the superficial or the deep veins of the legs. *See* http://my.clevelandclinic.org (last visited on July 5, 2012).

through 2008. Plaintiff has also consistently suffered from edema in the left leg during the same time period.

The Commissioner seems to argue that after Plaintiff's month-long hospital stay and repeated wound treatments in 2005, Plaintiff had no more infections or leg ulcers. The Commissioner argues that "Plaintiff's treatment notes from Brevard Health Alliance from March 2006 to May 2009 consistently showed Plaintiff's legs had no lesions [and] his sensation was intact." Doc. 22 at 6. The ALJ erroneously summarizes some of the medical records as Plaintiff continuing "to have left leg problems; however, [he] was free of lesions, open sores, or serious rashes." R. 21[2].

To the contrary, as Plaintiff testified, he had an abscess on the side of his left leg when he left prison in September 2007 and has had recurrent infections ever since; he has ulcers on his left leg that are more than six months old that have not healed properly. R. 46. Plaintiff's medical records indicate that before, during, and after the time he was incarcerated (from June 2006 to September 2007– R. 40-41) Plaintiff had repeated problems with wounds not healing and reinfection. Plaintiff's left leg wound problems started in April 2005, when he required surgical treatment of necrotizing soft tissue in the muscle and skin for a wound approximately 5 cm x 2 cm, with a small amount of edema on the left lower leg. R. 263-64. From the time Plaintiff had the surgery and a one-month hospital stay in 2005, physicians had noted that Plaintiff experienced slow healing due to diabetes secondary to infection and his other conditions, and that he had a history of blood clots in the left leg, cellulitis, obesity, thrombophlebitis, leg abscess, slow healing diabetic ulcers, and left leg problems subsequent to the removal. R. 246, 266, 268, 291, 295, 313, 317, 321.

By May 2005, the wounds that had received surgery were nearly completely closed, however, there was a presence of proud flesh with some soft tissue edema in the left lower extremity consistent

---

[2]The ALJ's statement is internally inconsistent because he goes on to cite other records of abscesses, but noting only that they were "completely healed," or there was no new pain R. 22. The ALJ also based his determination that Plaintiff was non-compliant on his failure to monitor blood sugar in prior years' treatment notes. R. 410 (June 2008). However, notes from earlier periods as well as January 2009 indicate that Plaintiff was tracking his glucose levels daily as directed. R. 417, 441.

with a venous stasis ulcer; his physician recommended a compression stocking for the left leg. R. 263. In June 2005, Plaintiff still had a leg infection that Dr. Byrd of the Sheriff's Department Medical Unit considered to be a diabetic ulcer on his left leg below the knee; he was allowed use of a cane. R. 303, 317. Dr. Byrd ordered daily wound care and nursing assistance to change Plaintiff's bandages. R. 317.

At the time Plaintiff re-entered the Department of Corrections system in June 2006, Dr. Tran noted a history of deep vein thrombosis in his lower left leg; he was prescribed a surgical consultation when symptomatic, a low bunk, a cane, and no standing more than 15 minutes for three months. R. 357. Right after being released from prison, in September 2007, Plaintiff presented at Cape Canaveral Hospital emergency room with a left leg abscess and cellulitis. R. 324. He reported left lower extremity pain and drainage for the previous ten days, with redness and swelling for the previous fifteen months (during the time he was incarcerated). The left lower extremity was found to have diffuse peripheral vascular changes with redness and warmth, and peripheral edema distal/mid thigh down through the ankle region. The right lower extremity was warm to the touch. R. 325.

After the abscess was drained in the Emergency Room, wound cultures demonstrated gram-positive cocci with Staphylococcus aureus infection; Plaintiff was prescribed antibiotics, but he was unable to get them due to cost. R. 325, 333, 335, 435. In October 2007 at a follow up appointment with Brevard Health Alliance, his left leg abscess/cellulitis had proven to be MRSA, and he was still experiencing drainage. R. 431. In December 2007, Plaintiff was prescribed a walking cane by a physician at Brevard Health Alliance. R. 349. In May 2008, Plaintiff was seen at Brevard Health Alliance for complaints of worsening lower left extremity edema. R. 413. In June 2008, Plaintiff's left leg had swollen red and draining ulcers for two days; last time he had it was six months before due to chronic venous stasis with deep vein thrombosis ("DVT"), which caused his leg to be enlarged. R. 410. The records note Plaintiff's chronic venous stasis with DVT had caused his leg to

-8-

be enlarged; he had not obtained labs or TED hose.  R. 410.  On physical exam, Plaintiff had edema in the lower left leg with deep red pre-tibial area which had scattered weeping.  R. 411.  Lab results reported a heavy growth of Staphylococus aureus and he was prescribed medication.  R. 405.

By August 2008 when Plaintiff returned for follow up on his leg wound it had increased to 4 cm.  Dr. Schneider ordered an increase in insulin and support hose for venus insufficiency.  R. 426.  The wound eventually healed and, in January 2009, he reported having no new wounds or abscesses, although he was unable to afford the compression stockings for his legs.  R. 417.   In January 2009, his blood sugar levels were high in the range of 145 to 279, most above 200.  R. 417.

Plaintiff also alleges neuropathy in  his extremities from his diabetic condition, which was only somewhat controlled.  R. 48-49.  Plaintiff testified at the August 12, 2009 hearing that he had diabetic neuropathy in his upper and lower extremities, including his feet and hands, more on the left than the right with numbness and tingling.  R. 48.  He testified that he required a cane because he could not feel things very well underneath his feet.  R. 48.  The ALJ discounted Plaintiff's testimony because  there was "no radiculopathy" mentioned in the treatment notes. R. 23.  However, medical records note his complaints of pain in his feet as early as September 2006 while in prison; the prescription for the cane was continued by Brevard Health Alliance in December 2007.  R. 356, 361-63 (bilateral foot pain); 349 (prescription for walking cane).  Plaintiff also testified that he had to elevate his leg four to five times per day because of chronic edema.  R. 58.  Records from Brevard Health Alliance consistently note on examination that Plaintiff had consistent swelling in his extremities, particularly on the left.  *See*, *e.g.,* R. 430 (leg edema – chronic venous stasis), 436 (edema), 438 (leg swelling), 439 (worsening edema), 441,  (pain and edema in lower left leg), 443 (same).

While the ALJ noted some of the records of Plaintiff's wound reinfection or diabetic ulcer problems after his prison time in discrediting the severity of Plaintiff's limitations, the ALJ failed to

-9-

note Plaintiff's infections while in the Department of Corrections (for a total of more than 14 months) or that Plaintiff had new wounds after that time, or that he remained unable to afford compression stockings for his legs to reduce the chronic edema from 2006 to 2009.  Overall, the ALJ failed to view Plaintiff's left leg condition – diabetic ulcers, deep vein thrombosis, cellulitis, or venous stasis ulcers – in combination with Plaintiff's other conditions, most notably neuropathy in Plaintiff's extremities. The ALJ also relied on the March 2008 RFC opinion of the non-examining state physician, Dr. Stone, who did not have Plaintiff's full treatment notes, failed to note Plaintiff's chronic edema or recurring wounds, and merely noted "gait is steady, no limping" in opining that Plaintiff could do medium work.[3]  R. 392.  However, Plaintiff's limitation is that he is not able to feel things underneath his feet (R. 48) due to edema in his lower extremities and numbness, and is not due to a back or joint problem that would cause a limp or change in his gait.  Because the ALJ's decision failed to properly consider all of Plaintiff's conditions and impairments, it was not based on substantial evidence.

Plaintiff argues that the ALJ also erred in assessing his non-compliance by focusing on the fact he did not eat breakfast the day of the hearing (when he was nervous) and by failing to consider his inability to afford prescribed medications.  The ALJ found that the Plaintiff was non-compliant with treatment, stating:

> The undersigned determined that the claimant's testimony was generally credible; however, the claimant demonstrated non-compliance in the record with dressing his wounds and with his diabetes mellitus. *If the claimant's symptoms would have worsened, it would have been because of his non-compliance and not a progression of the disease.* The claimant admitted to his treating physician and at the hearing that he had not been keeping track of his glucose levels and he did not eat after he took insulin shots before the hearing. The claimant also admitted that he was not compliant with dressing his wounds, but he testified at the hearing that the medical office did not give him proper equipment and he could not afford to buy the proper wrappings for the gauze.

---

[3]Dr. Stone also erroneously noted, "There is no history of other complications from his diabetes and obesity."  R. 395.

R. 23 (emphasis added). Plaintiff argues that the ALJ should not have drawn what is essentially a medical conclusion that Plaintiff's alleged non-compliance caused a worsening in his symptoms because that is a medical determination, and since glucose monitoring is intended to measure the status of the Plaintiff's diabetes rather than to treat it, it is not clear without a medical opinion whether the Plaintiff's failure to monitor his glucose levels would actually result in a worsening of his condition. Doc. 21 at 19. Plaintiff's most recent records clearly showed that he had been monitoring his glucose levels. *See* R. 417. Plaintiff's hearing testimony and the medical records repeatedly referred to Plaintiff's inability to afford medications/dressings for his wounds (R. 66-69) and, as the ALJ noted, Brevard Health Alliance would not provide them for free. While a controllable medical condition is generally not disabling, if the claimant cannot afford the treatment and can find no way to obtain it, poverty may excuse the non-compliance. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). On remand, the ALJ will consider Plaintiff's ability to afford the treatment for his impairments.

Plaintiff testified that he had not been to a neurologist or endocrinologist (despite severe diabetes and symptoms of peripheral neuropathy) due to a lack of finances. R. 69. Plaintiff argues that the ALJ erred in failing to order a consultative examination for Plaintiff's impairments or re-contacting his treating physicians at Brevard Health Alliance. The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Plaintiff has a number of serious conditions that have not ever been addressed by a specialist since they developed, or were exacerbated, during his prison stay. On remand, the ALJ will order a consultative examination by a physician, such as an endocrinologist or neurologist, who specializes in treating individuals with diabetes and related neuropathies to determine the extent of Plaintiff's limitations and obtain the consulting physician's opinion of Plaintiff's residual functional capacity with the documented

impairments. The ALJ will hold a new hearing if necessary to include such limitations in the appropriate hypothetical to the VE.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 5, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record